UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCISCO HERNANDEZ and <br> MERCY HERNANDEZ, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A. d/b/a <br> WELLS FARGO HOME MORTGAGE, INC., <br><br> Defendant. | * <br> * <br> * <br> *   Civil Action No. 13-cv-13047-ADB <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM AND ORDER

July 22, 2015

BURROUGHS, D.J.

**I.     Introduction**

Plaintiffs Francisco and Mercy Hernandez (the "Hernandezes") have sued Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] for an alleged violation of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). This matter is before the Court on Wells Fargo's motion to dismiss the plaintiffs' First Amended Complaint (the "Amended Complaint") for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). [Dkt. 23.] Wells Fargo contends that the sole count in the Amended Complaint is barred by the FCRA's two-year statute of limitations. After a hearing conducted on May 12, 2015, the Court notified the parties that it was converting the motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and gave the parties an opportunity to submit

---

[1] The defendant notes that the plaintiffs have incorrectly named "Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage, Inc." According to the defendant, Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., rather than a name under which Wells Fargo Bank, N.A. is doing business.

supplemental briefs, which they both did. For the reasons explained in this opinion, and after careful review of the procedural history of this case, the allegations in the Amended Complaint, and the arguments presented in the parties' briefs and at the hearing, the Court concludes that the plaintiffs' FCRA claim is time-barred. Therefore, Wells Fargo's motion to dismiss, as converted by the Court to a motion for summary judgment, is GRANTED.

## II.     Procedural and Factual Background

### A.     The Original Complaint

On November 27, 2013, the plaintiffs filed a three-count Complaint (the "Original Complaint") against Wells Fargo in this Court. [Dkt. 1.] In Counts I and II, the plaintiffs alleged willful and negligent violations of the FRCA (15 U.S.C. §§ 1681n, 1681o). In Count III, they alleged intentional infliction of emotional distress.

The Original Complaint included the following factual allegations: In June 2009, the plaintiffs purchased a property located at 22 Sherman Street in Peabody, Massachusetts. [Dkt. 1, ¶¶ 2, 6.] They financed the purchase with a mortgage loan from Wells Fargo. [Id. ¶ 5.] On or about November 29, 2011, they discovered that Wells Fargo had falsely reported to various consumer reporting agencies ("CRAs") that their mortgage account status was "180 days late." [Id. ¶ 7.] This mistaken information purported to show that the plaintiffs were already behind on their mortgage payments before they had even purchased the property. [Id. ¶ 8.] On or about November 29, 2011, the plaintiffs submitted a written dispute directly to Wells Fargo. [Id.] In their Original Complaint, the plaintiffs did not allege that they ever submitted a dispute to any CRA, but only directly to Wells Fargo.

Wells Fargo moved to dismiss the Original Complaint [Dkt. 10], and the Court granted that motion,[2] holding, as to the FCRA counts, that "[15 U.S.C.] § 1681s-2(b) <u>only</u> triggers a duty once a CRA has been notified [of a dispute], and does not provide any remedy for a consumer who notifies a furnisher directly."[3] <u>See</u> Report and Recommendation (Aug. 19, 2014) (Collings, M.J.) [Dkt. 17, at 8], <u>adopted</u> <u>by</u> Order (Sept. 30, 2014) (Gorton, D.J.) [Dkt. 19]. In other words, the plaintiffs' claims for willful and negligent violations of the FCRA were dismissed because the Original Complaint contained "no allegation . . . that the plaintiffs notified a CRA of a discrepancy in information concerning their mortgage payment history with Wells Fargo." [Dkt. 17, at 9.] <u>See</u> 15 U.S.C. §§ 1681s-2(b)(1), 1681s-2(c)(1); <u>Chiang v. Verizon New England, Inc.</u>, 595 F.3d 26, 35-36 & n.8 (1st Cir. 2010). The Court also dismissed the claim for intentional infliction of emotional distress, holding that the FCRA preempted that claim. [Dkt. 17, at 10-11.] Thus, on September 30, 2014, the Original Complaint was dismissed in its entirety, but because it appeared from the briefs that the plaintiffs might be able to plead a viable cause of action under the FCRA, the Court granted leave to amend the complaint solely with respect to the FCRA claim. [Dkt. 17, at 10-11; Dkt. 19.]

**B.     The Amended Complaint**

On October 22, 2014, the plaintiffs filed a one-count Amended Complaint, alleging that Wells Fargo had violated the FCRA, 15 U.S.C. § 1681s-2(b), which sets forth certain obligations on a furnisher that are triggered when a CRA has informed the furnisher of a dispute regarding

---

[2] This action was originally assigned to United States District Judge Nathaniel Gorton. The case was reassigned to the undersigned on February 13, 2015, as part of a random reassignment of pending cases. [Dkt. 30.] Before the reassignment, Judge Gorton ruled on Wells Fargo's motion to dismiss the Original Complaint (adopting the Report and Recommendation of Magistrate Judge Robert Collings). [Dkt. Nos. 17, 19.]

[3] The parties do not dispute that Wells Fargo is a furnisher as defined in the FCRA.

information provided to the CRA, as discussed in greater detail below (Part III-B). Compared to the Original Complaint, the Amended Complaint added, inter alia, the following new factual allegations:

> 9. [S]ometime in the fall of 2009, the Plaintiffs went to Bank of America to inquire about a loan for funds to make improvements to the property.
>
> 10. Bank of America ("Bank") informed the Plaintiffs that the loan with the Defendant was showing dates of entries which were not consistent with the commencement date of the loan and, further that "late" entries for the loan were on the Plaintiffs' credit report.
>
> . . .
>
> 12. The Plaintiffs thereafter requested that Trans Union (CRA) obtain a correction of the inaccurate information from the Defendant and, further, understood thereafter that the CRA informed the Defendant of the inaccurate information.
>
> 13. Despite having received notice of the claimed inaccuracy from the CRA, the Defendant continued to report to both the Plaintiffs and the CRA that the Plaintiffs['] loan payments were late.
>
> 14. The Plaintiffs again attempted to have the incorrect loan information corrected, but the Defendant responded by representing that the loan reporting to the CRA was accurate.

[Dkt. 20, ¶¶ 9-10, 12-14.]

Wells Fargo once again moved to dismiss, this time on statute of limitations grounds. Wells Fargo argued that the plaintiffs were on notice of the existence of their FCRA claim by October 2010, at the latest, and because they did not file their Original Complaint until November 27, 2013, the claim was untimely under the FCRA's two-year limitations period.[4] [Dkt. 23.] Wells Fargo attached to its motion two letters from Wells Fargo to the Hernandezes, which Wells Fargo contends are referred to in Paragraphs 13 and 14 of the Amended

---

[4] An action must be brought under the FCRA "not later than . . . 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability . . . ." 15 U.S.C. § 1681p.

Complaint.[5] In the first letter, dated September 30, 2010, Wells Fargo informed the plaintiffs: "This letter is in response to a request for a credit adjustment. We have researched our records and the following was correctly reported to the credit agencies. All payment information from July 2009 through September 2010 has been verified as having reported correctly." [Dkt. 23-1.] The second letter, dated October 26, 2010, stated: "This letter is in response to a request for a credit adjustment. We have researched our records and the following was correctly reported to the credit agencies. The May 2010 [payment] was accurately reported as 30 days delinquent on June 2010." [Dkt. 23-2.] Wells Fargo argues that based on these two letters, by October 2010, at the latest, the plaintiffs were on notice of Wells Fargo's response to their dispute submitted to TransUnion LLC ("TransUnion").[6]

The plaintiffs take the position that despite the letters dated September 30, 2010, and October 26, 2010, they "did not realize that the Defendant was continuing to re-report inaccurate information regarding the origin date of the loan obligation until" on or about December 1, 2011, when Wells Fargo confirmed this in response to the plaintiffs' dispute submitted directly to Wells Fargo on or about November 29, 2011. [Dkt. 28, at 4; Dkt. 37, at 2.] The plaintiffs urge the Court to hold that "[e]ach re-report of erroneous credit is a separate FCRA violation." [Dkt. 37,

---

[5] Because the Court has converted Wells Fargo's motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), the Court considers these two letters without reaching the question of whether the letters are incorporated by reference in Paragraphs 13 and 14 of Amended Complaint.

[6] The following additional undisputed facts are not part of the Amended Complaint but appear in Wells Fargo's Statement of Undisputed Material Facts. [Dkt. 39.] As these additional facts are uncontroverted by the plaintiffs, they are deemed to be admitted pursuant to Local Rule 56.1:

The plaintiffs submitted an initial dispute to TransUnion on or before August 2, 2010. [Dkt. 39, ¶ 2.] Wells Fargo's letter dated September 30, 2010, was in response to the plaintiffs' initial dispute submitted to TransUnion. [Id. ¶ 5.] On or about October 2, 2010, the plaintiffs submitted a second dispute to TransUnion. [Id. ¶ 9.] Wells Fargo's letter dated October 26, 2010, was in response to the plaintiffs' second dispute submitted to TransUnion. [Id. ¶ 12.]

5

at 4.] Because the plaintiffs allege that they were unaware that such erroneous "re-reports" continued until they contacted Wells Fargo directly on November 29, 2011, the plaintiffs contend that their Original Complaint, filed on November 27, 2013, was timely. [Id.]

As explained below, the Court disagrees and holds that based on the letters dated September 30, 2010, and October 26, 2010, there is no genuine dispute that the plaintiffs were on notice of the alleged violation that forms the basis of their FCRA claim against Wells Fargo upon their receipt of the letter dated October 26, 2010, at the latest. Thus, their claim should have been filed within two years of receiving the letter dated October 26, 2010. 15 U.S.C. § 1681p. The Original Complaint, however, was not filed until November 27, 2013, more than three years later. The plaintiffs' FCRA claim was therefore untimely (by more than one year) and must be dismissed.

Additional facts are discussed below where appropriate.

### III. Discussion

#### A. Standard of Review – Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material" fact is one that "might affect the outcome of the suit under the governing law." Id. The moving party has the burden of proving that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

"Although it is true that 'the standards for summary judgment are highly favorable to the nonmoving party, the nonmovant . . . still has a burden to produce evidence sufficient for a reasonable juror to find in his favor.'" Chiang, 595 F.3d at 34 (quoting Hinchey v. NYNEX Corp., 144 F.3d 134, 146 (1st Cir. 1998)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. (quoting Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment may be granted where an impartial jury could only return a verdict in favor of the moving party. Mitchell v. U.S. Airways, Inc., 858 F.Supp.2d 137, 147 (D. Mass. 2012).

**B.    Private Causes of Action Against Furnishers Pursuant to 15 U.S.C. § 1681s-2(b)**

The plaintiffs have sued Wells Fargo, a furnisher within the meaning of the FCRA, for an alleged violation of 15 U.S.C. § 1681s-2(b). [Dkt. 20, Count I.] Under 15 U.S.C. § 1681s-2, furnishers are prohibited from providing inaccurate information to CRAs, 15 U.S.C. § 1681s-2(a)(1), and also have specific duties in the event of a dispute over furnished information, 15 U.S.C. § 1681s-2(b).[7] See also Chiang, 595 F.3d at 35. However, a private cause

---

[7] In particular, 15 U.S.C. § 1681s-2(b) imposes duties on a furnisher that are triggered when a CRA has informed the furnisher of a dispute regarding information provided to the CRA. This section provides, in relevant part:

> (b) Duties of furnishers of information upon notice of dispute
>
> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> >
> > (C) report the results of the investigation to the consumer reporting agency;
> >
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to

7

of action exists only for the second of these duties; inaccurate reporting by a furnisher does not, by itself, give rise to a private cause of action. See 15 U.S.C. § 1681s-2(c)(1) (no civil liability for a violation of 15 U.S.C. § 1681s-2(a)); see also Chiang, 595 F.3d at 35. Furthermore, while a consumer may dispute credit information either directly with a furnisher or with a CRA, a private cause of action exists only for failure to properly investigate a dispute reported to a CRA. Chiang, 595 F.3d at 35. No private cause of action arises for failure to properly investigate a dispute when a consumer has submitted the dispute directly to the furnisher, rather than to a CRA. Id. at 35 n.8. As discussed above (Part II-A), it was on this basis that the FRCA claims in the plaintiffs' Original Complaint were dismissed. Finally, as previously addressed, an action must be brought under the FCRA "not later than . . . 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability. . . ." 15 U.S.C. § 1681p.

C. **Plaintiffs' FCRA Claim Is Time-Barred**

The Court concludes that the plaintiffs' FCRA claim against Wells Fargo accrued, at the latest, when the plaintiffs received the letter dated October 26, 2010. Thus, their FCRA claim should have been filed within two years of that date. The following undisputed facts[8] lead to this

---

which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

[8] As explained above, facts in Wells Fargo's Statement of Undisputed Material Facts [Dkt. 39] that the plaintiffs have not controverted are treated as admitted and undisputed for the purpose of ruling on Wells Fargo's motion. See supra note 6.

conclusion:

On June 22, 2009, the plaintiffs purchased a property, financing the purchase with a mortgage loan from Wells Fargo (the "Loan"). [Dkt. 20, ¶¶ 6-7; Dkt. 39, ¶ 1.] The plaintiffs' first payment on the Loan was due on August 1, 2009. [Dkt. 20, ¶ 8.] That payment and subsequent monthly payments were made on time. [Id.] In or around the fall of 2009, in connection with inquiring about taking out another loan from a different lender, the plaintiffs learned of an inaccuracy in their credit report concerning the Loan. [Id.] On or about August 2, 2010, the plaintiffs submitted an initial dispute to TransUnion (a CRA), which TransUnion reported to Wells Fargo. [Dkt. 39, ¶¶ 2-3.] On or about September 30, 2010, in response to that initial dispute, Wells Fargo mailed a letter to the plaintiffs (dated September 30, 2010), stating, in part: "This letter is in response to a request for a credit adjustment. We have researched our records and the following was correctly reported to the credit agencies. All payment information from July 2009 through September 2010 has been verified as having reported correctly." [Dkt. 23-1; Dkt. 39, ¶ 5.] On or about October 2, 2010, the plaintiffs submitted a second dispute to TransUnion, which TransUnion again reported to Wells Fargo. [Dkt. 39, ¶¶ 9-10.] On or about October 26, 2010, in response to the second dispute submitted to TransUnion, Wells Fargo mailed another letter to the plaintiffs (dated October 26, 2010), stating, in part: "This letter is in response to a request for a credit adjustment. We have researched our records and the following was correctly reported to the credit agencies. The May 2010 [payment] was accurately reported as 30 days delinquent on June 2010." [Dkt. 23-2; Dkt. 39, ¶ 12.] Aside from the two disputes submitted to TransUnion on or about August 2, 2010 and October 2, 2010, the plaintiffs did not submit any other disputes to TransUnion that TransUnion reported to Wells Fargo. [Dkt. 39, ¶ 16.]

The plaintiffs assert that even after Wells Fargo "continued to send communications to Hernandez contending that the information reported to the CRA was accurate," the plaintiffs "believed that the Defendant had corrected the incorrect reporting of late payments . . . ." [Dkt. 37, at 2.] Upon receiving the September 2010 and October 2010 letters from Wells Fargo, however, the Court concludes that the plaintiffs understood, or reasonably should have understood, that Wells Fargo was taking the position that there was no error in the information that Wells Fargo had furnished to CRAs. In the first letter dated September 30, 2010, Wells Fargo purported, after researching its records, to confirm the accuracy of "payment information from <u>July 2009</u> through September 2010 . . . ." [Dkt. 23-1; Dkt. 39, ¶ 5 (emphasis added).] This reference to July 2009 should have sounded alarm bells for the plaintiffs, given that their first monthly mortgage payment to Wells Fargo had not been due until August 1, 2009. In the second letter dated October 26, 2010, Wells Fargo informed the plaintiffs that after researching its records, it concluded that a subsequent payment was "accurately reported as 30 days delinquent . . . ." [Dkt. 23-2; Dkt. 39, ¶ 12.] A reasonable person in the plaintiffs' position would have understood from these two letters that Wells Fargo had determined that no corrections were necessary to the information that had been furnished. Thus, the plaintiffs' claim that they believed that Wells Fargo had made the necessary corrections—even after Wells Fargo stood by the accuracy of the information previously reported—is implausible and fails to create a genuine dispute sufficient to overcome summary judgment, as no reasonable and impartial jury could find in the plaintiffs' favor on this point. <u>Anderson, Inc.</u>, 477 U.S. at 248.[9]

---

[9] At their depositions, the Hernandezes both testified that they did not specifically recall receiving the September 2010 and October 2010 letters from Wells Fargo. [Dkt. 39, ¶¶ 6-7, 13-14.] Mercy Hernandez acknowledged, however, that they "probably" received these letters. [M. Hernandez Dep. Tr. at 38:18-41:13 (Dkt. 41-4).]

Nowhere in their briefs do the plaintiffs take the position that they did not receive the letters. At the hearing on this motion, likewise, the plaintiffs did not claim not to have received the letters. Their

The plaintiffs also contend that despite the September 2010 and October 2010 letters, they "did not realize that the Defendant was continuing to re-report inaccurate information regarding the origin date of the loan obligation . . . ." [Dkt. 28, at 4.] They urge the Court to find that "[e]ach time the Defendant furnished inaccurate reports another violation of the statute occurred," and thus, that their claim was timely. [Dkt. 37, at 4.] In addition to suffering from the same implausibility as the plaintiffs' purported belief that Wells Fargo had corrected the incorrect reporting of late payments, this argument fails as a matter of law.

Although the FCRA prohibits a furnisher from providing consumer information to a CRA that the furnisher "knows or has reasonable cause to believe that . . . is inaccurate," 15 U.S.C. § 1681s-2(a)(1)(A), the First Circuit has explained that "Congress expressly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute." Chiang, 595 F.3d at 35 (citing 15 U.S.C. § 1681s-2(c)(1)). Thus, under the applicable statute and controlling case law, the mere reporting of inaccurate information, although prohibited, does not give rise to a private cause of action under the FCRA. Nor is the Court aware of any support for holding that a private cause of action exists for the "re-reporting" of inaccurate information under the circumstances alleged in the Amended Complaint. Wells Fargo is not alleged to have "re-reported" information that it had already determined, after investigating a dispute, to be inaccurate. E.g., Turner v. Experian Info. Solutions Inc., No. Civ.A. 13-00010,

---

supplementary brief, which was submitted after both plaintiffs were deposed, states that after they submitted a dispute to TransUnion, "the Defendant continued to send communications to Hernandez contending that the information reported to the CRA was accurate." [Dkt. 37, at 2.] Although the plaintiffs do not specifically identify these communications from Wells Fargo by date or otherwise, they do not suggest any alternative to the letters dated September 30, 2010, and October 26, 2010.

Based on their briefs and oral argument, the Court therefore understands the plaintiffs not to be taking the position that they never received the letters, despite their professed imperfect memories in this regard at their depositions. Thus, the Court finds that there is no genuine dispute as to whether the September 2010 and October 2010 letters were mailed and whether the plaintiffs received them in the ordinary course, within a few days or so after they were mailed.

2013 WL 3995166, at *7 (D. Me. Aug. 5, 2013) (15 U.S.C. § 1681s-2(b) is "plainly meant to impose an obligation on furnishers to refrain from re-reporting information, already the subject of a proper consumer dispute, <u>which the furnisher has determined is inaccurate, incomplete, or unverifiable</u>") (emphasis added).[10] The Court concludes that the plaintiffs' argument that "[e]ach re-report of erroneous credit is a separate FCRA violation" for purposes of determining when the plaintiffs' claim accrued is an attempt to skirt the statutory limitation on liability found in 15 U.S.C. § 1681s-2(c)(1) and to revive the FCRA claims that this Court previously dismissed in the Original Complaint. The Court therefore rejects this argument.

All of the above being said, the Court somewhat reluctantly dismisses this case. It appears that Wells Fargo reported erroneous information and initially failed to acknowledge or correct its mistakes, even after being notified at least twice by the plaintiffs (through TransUnion) that the plaintiffs' credit report reflected inaccurate information. Although in some respects the plaintiffs were diligent about seeking to have the error corrected, and perhaps did not appreciate the significance of the letters they received from Wells Fargo, they nonetheless waited too long to file suit and the Court must now, as a result, dismiss the action.

## IV.  Conclusion

For the above reasons, Wells Fargo's motion to dismiss the Amended Complaint, as converted by the Court to a motion for summary judgment, is <u>GRANTED</u>. Pursuant to Fed. R. Civ. P. 58, the Clerk is directed to enter judgment for the defendant.

**SO ORDERED.**                             /s/ Allison D. Burroughs
                                            ALLISON D. BURROUGHS
Dated: July 22, 2015                        UNITED STATES DISTRICT JUDGE

---

[10] The other cases cited by the plaintiffs in support of their "re-reporting" argument either discuss other, inapplicable sections of the FCRA, <u>Hyde v. Hibernia Nat'l Bank</u>, 861 F.2d 446 (5th Cir. 1988), or pre-date and are inconsistent with the First Circuit's holding in <u>Chiang</u>, <u>Larson v. Ford Credit</u>, No. Civ.A. 06-1811, 2007 WL 1875989 (D. Minn. June 28, 2007).